The plaintiff appeals from a summary judgment for the defendant, Warrior Gulf Navigation Company ("Warrior 
Gulf"). Bear Creek Enterprises ("Bear Creek"), one of the plaintiffs, is an independent contractor that hauled and unloaded iron ore. Bear Creek's sole source of business was through Warrior Gulf. Bear Creek's agreement with its employees stated that each employee would continue in employment with Bear Creek for the duration of Bear Creek's services to Warrior Gulf.
The employees at Bear Creek presented a "petition of representation" stating that a substantial number of employees wished to be represented by the United Steel Workers of America for the purposes of collective bargaining. Warrior Gulf abruptly terminated the subcontract services of Bear Creek. Bear Creek subsequently closed its business.
Bear Creek's former employees sought relief from the National Labor Relations Board ("NLRB"). The union filed an unfair labor practices charge against Bear Creek, alleging that Bear Creek had laid off its employees because of their union activity. The NLRB issued a complaint, but the case was ultimately settled. Several months later, Bear Creek's former employees filed an NLRB unfair labor practices charge against Warrior Gulf. That charge alleged that Warrior Gulf had violated § 8(a)(1) and (3) of the National Labor Relations Act.
Following an investigation of the charge, the NLRB's regional director notified the parties that the NLRB would not issue a complaint because, it said, "An employer does not discriminate against employees within the meaning of § 8(a)(3) of the [National Labor Relations] Act by terminating its business relationship with another employer even if the termination is caused by an antagonism toward the union activities being engaged in by the employees of the adversely affected employer."
The regional director's decision was not appealed to the NLRB's general counsel. Four months later, the same employees joined Bear Creek in this lawsuit against Warrior Gulf alleging intentional interference with contractual relations.
The trial court granted summary judgment in favor of Warrior Gulf, stating:
 "[T]he complaint reflects facts which constitute either a refusal to deal or an intentional inducement for Bear Creek not to continue with their employees who wished to become unionized. If the former exists, the cause of action does not constitute intentional interference [with contractual relations]. If the latter exists, the claim is pre-empted by the National Labor Relations [Act]. Therefore, no genuine issue of material fact exists and summary judgment is entered in favor of the defendant, Warrior Gulf Navigation Co., Inc., as a matter of law."
The employees have not joined in this appeal.
The elements required to make out a prima facie case of intentional interference with contractual relations were enumerated in Lowder Realty, Inc. v. Odom, 495 So.2d 23, 25
(Ala. 1986):
 "(1) The existence of a contract or business relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of defendant's interference. However, defendant has an opportunity to prove justification as an affirmative defense to plaintiff's claim."
See, also, Gross v. Lowder Realty Better Homes Gardens,494 So.2d 590 (Ala. 1986). Although Warrior Gulf undoubtedly knew that a contract or business relation existed between Bear Creek and its employees, thus satisfying the first two elements of the cause of action, there is nothing in the record to link Warrior Gulf with the remaining elements.
Bear Creek alleges that Warrior Gulf terminated its services because it did not want a subcontractor with union labor working on its premises. Even if this allegation *Page 961 
be taken as true, as it was by the trial court, it would not constitute an intentional interference on the part of Warrior Gulf with the contract between Bear Creek and its employees. Further, the termination by Warrior Gulf of the services of Bear Creek did not necessarily mean that Bear Creek had to cease operating as a company. Certainly, Bear Creek might have carried on similar business operations with some other company.
Warrior Gulf argue that it was simply exercising a right to refuse to deal with Bear Creek. The comments to § 766Restatement (Second) of Torts (1979) support this position:
 "b. The rule stated in [§ 766] does not apply to a mere refusal to deal. Deliberately and at his pleasure, one may ordinarily refuse to deal with another, and the conduct is not regarded as improper, subjecting the actor to liability. . . .
". . . .
 "l. Inducement by refusal to deal . . . While, under the rule stated in [§ 766], A may not, without some justification induce B to break his contract with C, A is ordinarily free to refuse to deal with B for any reason or no reason. . . . A's aversion to C is as legitimate a reason for his refusal to deal with B as his aversion to B."
We hold, therefore, that Warrior Gulf's action amounted to a mere refusal to deal, and not an intentional interference with contractual relations. Any intentional inducement for Bear Creek not to continue with its employees who wished to be represented by a union would be the basis for a claim for which the National Labor Relations Board would have jurisdiction. Thus, summary judgment was appropriate in this instance.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.