[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 225 
Donald Barber and Michael Moore, doing business as Quality Office Equipment (hereinafter referred to as "Moore")[1], sued Canon, U.S.A., Inc. (hereinafter "Canon"), and its local dealer, Business Products Center, Inc. (hereinafter "BPC"), and Panasonic Communications and Systems Company (hereinafter "Panasonic") and its local dealer, P S Business Machines (hereinafter "P S"). Moore alleged that the defendants had violated his rights as a third-party beneficiary of certain contracts, that they had intentionally interfered with his business relations, and that they had set out on a course of conduct with a conscious or reckless disregard of Moore's rights. Further, Moore alleged that all defendants were guilty of conspiracy to commit these acts. Ultimately, the trial court entered a summary judgment in favor of all defendants on all claims. Moore appealed.
On a motion for summary judgment, the burden is initially on the movant to make a prima facie showing that there is no genuine issue of material fact (i.e., that there is no dispute as to any material fact), and that he is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; McClendon v.Mountain Top Indoor Flea Market, Inc., 601 So.2d 957
(Ala. 1992); Elgin v. Alfa Corp., 598 So.2d 807 (Ala. 1992). "The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact." McClendon, at 958; Elgin, at 810-11.
Rule 56 must be read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary *Page 226 
judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). This Court reviews the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods ofAlabama, Inc., 613 So.2d 359 (Ala. 1993).
The record, viewed in a light most favorable to Moore, suggests the following facts: In 1987 Donald Barber operated a sole proprietorship, doing business as Quality Office Equipment ("QOE"). In the fall of that year, Barber asked Moore to invest in the business. He did. In accordance with the investment agreement, Barber was to continue operating QOE and to be responsible for daily operations, payroll, purchases, and disbursements. Each was to receive compensation for labor done, and profits were to be split equally. Moore's role included serving as a business consultant to Barber, assisting with decision-making, corresponding on behalf of QOE, and handling litigation on behalf of QOE.
In 1989 and 1990, QOE was awarded service contracts from the General Services Administration ("GSA") of the Federal Government, authorizing QOE to repair Government-owned typewriters in Jefferson County. Those service contracts included repairs to Canon and Panasonic typewriters that had been purchased by the Government pursuant to GSA contracts with the Canon and Panasonic companies.
In 1989, Panasonic and Canon entered into separate contracts with the GSA that permitted them to sell typewriters to the Government and its agencies. Both contracts contained a specific clause addressing the contractor's obligations pertaining to making parts, information, and technical assistance available to businesses, such as QOE, that had Government repair contracts. Specifically, that clause reads:
 "Manufacturers receiving an award under this solicitation shall make available any parts, service manuals, schematics, and similar repair and maintenance information to local suppliers of repair, maintenance and rehabilitation services that are awarded a General Services Administration (GSA) contract for maintenance, repair or overhaul of Government owned equipment. The parts, service manuals, schematics and similar repair and maintenance information shall be made available at reasonable prices which are not higher than those normally charged other similar customers, and in sufficient quantities to fulfill the requirements of the GSA repair and maintenance contract."
Neither Canon nor Panasonic excepted to this clause in the contract.
QOE's GSA contract began October 1, 1989. Moore testified that in the following month he became aware of the need to acquire an adequate supply of Canon and Panasonic repair parts in order for QOE to perform its GSA contract. He testified that, in December 1989, he began calling upon Canon and Panasonic's local dealers to try to get the parts. On December 12, 1989, Moore contacted Canon's local dealer, BPC, concerning repair parts and service information; however, BPC refused to sell or provide either. Moore followed up with a letter advising BPC that QOE had a GSA service contract and requesting affirmation that it was Canon's policy, as well as that of its dealers, to refuse to provide parts. Moore also wrote Canon about its dealer's refusal to supply needed parts. Canon responded by letter, stating: "Canon maintains the policy of selling office typewriter parts only to authorized dealers. For this reason we are unable to sell parts to your company." Efforts to acquire needed Panasonic parts met with identical results.
Moore continued attempts to acquire parts from Canon and Panasonic, without success; eventually Moore had to purchase entire used typewriters from which to "rob" parts to perform the repairs required by its GSA contract. On other occasions, the dealers themselves repaired the Government typewriters, leading to Moore's being "backcharged" by the Government. Ultimately, Moore contends that he has had loss and costs in excess of $50,000 resulting from attempts *Page 227 
to perform his GSA contract without the ability to buy parts from Canon and Panasonic.
 Standing
Canon and Panasonic argued before the trial court that Moore lacked standing to maintain this action because, they say, he offered no proof that he was a partner with Barber in QOE. It appears from the evidence that Barber has assigned all of his interests to Moore concerning this lawsuit.
It is clear that we have no settled test for determining whether a partnership exists and that whether one exists is determined by reviewing all the attendant circumstances.Vance v. Huff, 568 So.2d 745 (Ala. 1990). The record reveals that Moore invested in QOE and was entitled to 50% of QOE's profits. Expenses were paid with partnership funds, and the testimony indicates that Moore and Barber intended to be partners. Moore and Barber consulted on business decisions, Moore purchased equipment for QOE, and Moore was QOE's representative in district court litigation. Viewing the evidence in a light most favorable to Moore, we conclude that that evidence, if believed by a jury, would support a finding that Moore was a partner in QOE.
 Third-party Beneficiary Claim
To recover under a third-party beneficiary theory, one must show the following: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the claimant was the intended beneficiary of the contract; and (3) that the contract was breached. Sheetz, Aiken Aiken v. Spann, Hall, Ritchie,Inc., 512 So.2d 99 (Ala. 1987).
Neither P S nor BPC was a party to the GSA contracts with Canon and Panasonic; therefore, we conclude that the trial court properly entered the summary judgment in their favor as to the third-party beneficiary claim.
However, viewing the evidence in a light most favorable to Moore, we conclude that the trial court erred in entering the summary judgment in favor of Canon and Panasonic as to the third-party beneficiary claim. The Government had with both Canon and Panasonic a contract that contained a clause requiring those companies to make parts available to others holding GSA service contracts. Moore falls within this class, and a jury could find that the availability of parts was to be a direct benefit to Moore in performing his contract with GSA. However, the policy of both Canon and Panasonic was that they would sell parts to "authorized dealers only." In other words, a jury could find that the provision in the Canon-GSA contract and in the Panasonic-GSA contract created a direct benefit to those holding GSA repair contracts, e.g., Moore, and that Canon and Panasonic's refusal to sell parts to Moore constituted a breach.
 Interference with Business or Contractual Relations
To recover on a claim of intentional interference with business or contractual relations, a plaintiff must prove the following elements: (1) The existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the plaintiff's contract or business relation; and (4) damage to the plaintiff as a result of the defendant's interference. Joe Cooper Associates, Inc. v. Central LifeAssurance Co., 614 So.2d 982 (Ala. 1992). Additionally, plaintiffs must produce substantial evidence of fraud, force, or coercion on the defendant's part. Joe Cooper Associates, supra.
Viewing the record in a light most favorable to Moore, we find substantial evidence supporting the first two elements of this cause of action as against Canon and Panasonic. Both Canon and Panasonic were aware of the contract between GSA and Moore. However, Moore failed to present substantial evidence of the third element, intentional interference. The record reveals that Canon and Panasonic's refusal to deal with Moore was consistent with, and undertaken pursuant to, an established company policy of selling parts only to authorized dealers. *Page 228 
This Court has consistently held that a mere refusal to deal is not an intentional interference with contractual relations.Bear Creek Enterprises, Inc. v. Warrior Gulf Navigation Co.,529 So.2d 959 (Ala. 1988).
 " 'Deliberately and at his pleasure, one may ordinarily refuse to deal with another, and the conduct is not regarded as improper, subjecting the action to liability.' "
529 So.2d at 961, quoting Restatement (Second) of Torts, § 766 (1979).
Therefore, because Moore presented no evidence of any active interference, we hold that the defendants' actions amount to a mere refusal to deal with Moore, and not an "intentional interference" with Moore's contractual relations. The defendants have the right to do business with whoever they choose and, although their refusal to deal may be actionable as a breach of contract, it is not actionable in tort.
 Wantonness
What constitutes wantonness depends entirely upon the facts presented in a particular case. Kennedy v. Jack SmithEnterprises, Inc., 619 So.2d 1326 (Ala. 1993). Generally, however, one is guilty of wanton misconduct when, with reckless indifference to the consequences, he consciously does some act that results in damage to another or when he has undertaken conduct with a reckless or conscious disregard of the rights of another. Berry v. Fife, 590 So.2d 884 (Ala. 1991). However, a mere failure to perform a contractual obligation is not a tort.
Moore's only response to the summary judgment motions, as they related to his wantonness claim, was to repeat the bare allegations of his complaint. These allegations alone are insufficient to meet the burden of producing substantial evidence in opposition to the defendants' properly supported motions for summary judgment. We have reviewed the record and conclude that it presents no factual basis for a wantonness claim against the defendants. The trial court properly entered the summary judgment as to this claim.
 Conspiracy
Liability for civil conspiracy rests upon the existence of an underlying wrong, and if the action alleged to constitute the underlying wrong provides no cause of action, then neither does the conspiracy itself. Jones v. BP Oil Co., 632 So.2d 435
(Ala. 1993). Moore failed to present substantial evidence that the defendants acted together in an attempt to interfere with his contractual relations with the GSA and to cause Moore to suffer damage. The trial court properly entered the summary judgment for the defendants on the conspiracy claim.
The judgment is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
[1] During this litigation, Barber divested himself and Quality Office Equipment of any rights or interests in this litigation. He assigned all of those interests to Moore.