Hixon Padgett appeals from a judgment in favor of the defendants, appellees herein, Raymond L. Hughes and Mary K. Hughes, entered notwithstanding a jury verdict against them. The trial court ruled that if the JNOV was reversed, the Hugheses would be entitled to a new trial. See Ala R.Civ.P. 50(c)(1).
Herman Gilreath owned and operated a restaurant in Henagar, Alabama. In February 1983, Gilreath bought the restaurant from Mr. and Mrs. Hughes and executed a purchase money mortgage to them to secure the balance of the purchase price. Beginning in late 1983, and continuing through May 1986, no fewer than ten tax liens were filed on the restaurant property by the federal, state, and municipal governments.
In June 1985, Hixon Padgett, not knowing of the liens, approached Gilreath with the idea of purchasing the restaurant. Gilreath expressed an interest in selling, and he and Padgett then met with Mr. and Mrs. Hughes to discuss the possibility of Padgett's assuming Gilreath's mortgage. Mr. and Mrs. Hughes consented. Mr. Hughes then advised Padgett that the title to the property was clear, but Padgett nonetheless requested that his own lawyer perform a title search.
On June 19, 1985, prior to obtaining the results of the title search, Padgett tendered a $2,500 down payment to Gilreath upon executing an option to purchase, and went into possession of the restaurant. By July 1, 1985, Padgett had learned of the tax liens. On that date, however, during a meeting with his lawyer and with Mr. and Mrs. Hughes, Padgett executed an agreement whereby he assumed Gilreath's mortgage. The Gilreath mortgage to Mr. and Mrs. Hughes contained provisions that would permit foreclosure in the event that taxes assessed against the property went unpaid or liens attached to it went unsatisfied.
By the time he entered the assumption agreement, Padgett had already tendered a down payment to Gilreath and had begun making improvements. He continued to keep the mortgage payments current. Padgett testified that at the meeting where the mortgage assumption agreement was executed, Mr. Hughes stated that he would foreclose the mortgage so that Padgett could receive clear, unencumbered title when the liens were satisfied. Mr. Hughes equivocated at trial when asked if he ever intended to foreclose. Mr. Hughes did testify, however, that it had been only in the days immediately prior to trial that he had discussed foreclosure with his attorney. Hughes also testified that he "did not know where [he stood] in relation to foreclosing or paying off these liens." Hughes testified that, because it was current, he had no idea whether he could foreclose on the mortgage, or whether he could get unencumbered title to Padgett.
Padgett's lawsuit asserted claims against Mr. and Mrs. Hughes and Herman Gilreath. Gilreath was served with process, but failed to answer; Padgett obtained a default judgment against him. The sole issue submitted to the jury was whether Mr. and Mrs. Hughes had perpetrated a promissory fraud on Padgett. The jury returned a verdict against Mr. and Mrs. Hughes, each of whom timely moved for JNOV, or, in the alternative, new trial. The trial court granted each JNOV motion on the grounds that Padgett had failed to prove an intent not to perform the promise of foreclosure when that promise was made and that Padgett's reliance on any of the misrepresentations made to him by Mr. and Mrs. Hughes was unreasonable. Padgett appeals from that judgment.
We note at the outset that the standard of review in this case is a narrow one. We recounted this standard in KingMines Resort, Inc. v. Malachi Mining Minerals, Inc.,518 So.2d 714, 715 (Ala. 1987):
 "The standard of judicial review for testing a motion for directed verdict is identical to that for testing a motion for J.N.O.V. Evidence sufficient to take the case to a jury as against a motion for directed verdict is likewise sufficient to withstand *Page 142 
a motion for J.N.O.V. Citing 5A Moore's Federal Practice § 50.07[2], this Court in Hanson v. Couch, 360 So.2d 942, 944 (Ala. 1978), stated:
 " 'A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence in the same way as does the motion for directed verdict at the close of all the evidence [Rule 50, A.R.Civ.P.]. Committee Comments. Granting the motion for judgment notwithstanding the verdict says, without weighing the credibility of the evidence, there can be but one reasonable conclusion from the evidence as to the proper judgment.' "
(Quoting Casey v. Jones, 410 So.2d 5, 7 (Ala. 1981)). The sufficiency-of-the-evidence standard applicable to this case is the scintilla rule; this action was filed prior to the effective date of the substantial evidence rule. One of the questions thus presented is whether there was a scintilla of evidence of promissory fraud for that claim to go to the jury. Russellville Production Credit Ass'n v.Frost, 484 So.2d 1084, 1085 (Ala. 1986). Thus, if there is a scintilla of evidence in support of Padgett's claim, the issue was for the jury's resolution.
The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, one based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive. See Russellville ProductionCredit Ass'n v. Frost, 484 So.2d at 1085-87. Furthermore, "[t]he failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. If it were, the mere breach of a contract would be tantamount to fraud." Id. at 1086 (citation omitted).
The JNOV was entered on the basis that Padgett had failed to produce a scintilla of evidence tending to prove that Mr. or Mrs. Hughes, at the time the promise was made, intended not to perform their promise, and on the basis that Padgett's reliance on the misrepresentation was unreasonable.[1]
Clearly, the misrepresentation made the subject of this lawsuit was that foreclosure would be initiated in an effort to remove the tax liens from the property. We must analyze the judgment separately as to each defendant.
We have examined the record and find no evidence that Mrs. Hughes ever promised to foreclose on the property. At the most, the evidence indicates that she was present when Mr. Hughes made that promise and scolded Padgett on a few occasions when the mortgage payments were late. Because she made no representation to Padgett, Padgett's claim against her collapses. We hold that the judgment notwithstanding the verdict was properly entered in favor of Mary K. Hughes; accordingly, we affirm the trial court's judgment as to that defendant.
As to Mr. Hughes, however, we reverse. In viewing the evidence most favorably to the non-moving party, Padgett, we conclude that there was at least a scintilla of evidence that when Mr. Hughes promised to foreclose on the restaurant mortgage he had no intention of doing so. We stress that, on this evidence, the jury could have reached a different conclusion, and was not required to find fraud. We do conclude, however, that by his testimony, Mr. Hughes created a jury question as to whether, at the time of his promise, he intended to fulfill it. Therefore, we are unable to second-guess the jury, and we are unwilling to side with Mr. Hughes on this element. *Page 143 
Turning to the question of whether Padgett's reliance on Mr. Hughes's misrepresentation was unreasonable, we conclude that the jury could have found that his reliance was not unreasonable. Prior to Padgett's assumption of the mortgage, Mr. Hughes represented to Padgett that there were no liens on the property. Shortly thereafter, Padgett discovered the liens. Despite the fact that Mr. Hughes had previously misrepresented the status of the title, Padgett entered the assumption agreement. Relying principally on Torres v.State Farm Fire Cas. Co., 438 So.2d 757 (Ala. 1983), and Holman v. Joe Steele Realty, Inc.,485 So.2d 1142 (Ala. 1986), the trial court noted that when a "red flag" indicates possibly fraudulent conduct, a plaintiff must take steps to safeguard his own interest and cannot prosecute his claim when his loss is the product of his own affirmative ignorance or neglect. Specifically, the trial court held:
 "Padgett had no right to rely because no reasonable or prudent person would rely under these or similar circumstances. According to his own testimony, Padgett knew that Hughes had lied to him once, and he was depending on his lawyer to represent his interest in this real estate transaction. Under these circumstances Padgett had no right to rely on the Hughes promise which forms the basis of this suit."
We think that this presumes too much and that it trespasses into the jury's domain of deciding credibility and resolving factual differences. First, Hughes testified that he did not even know of the liens until the meeting at which the assumption agreement was executed; if the jury chose to believe this, there was no "lie" to serve as a "red flag" to Padgett. Second, even if Mr. Hughes had misrepresented the status of the title, we can not hold that one untrue statement by a speaker puts other persons on notice that they can not reasonably rely on further statements by that speaker. Third, even if Mr. Hughes misrepresented the status of the title, that, in itself, does not conclusively cast a shadow of doubt upon his assurance that by foreclosing he would attempt to clear title, especially because Mr. Hughes had both the opportunity and the right to foreclose. Finally, we think it not unreasonable to believe a mortgagee who represents that he will attempt to clear title as to property subject to his mortgage; to attempt to do so would seem to be in the mortgagee's best interests. In this context, the jury could readily have reached the conclusion that Padgett could reasonably have relied on Mr. Hughes's misrepresentation that he would foreclose.
The trial court granted JNOV to Mr. Hughes due to its conclusions that Padgett had failed to satisfy elements (3) — reasonable reliance — and (5) — present intent not to perform. We disagree with both conclusions and hold that the claim was properly submitted to the jury. Accordingly, the judgment in favor of defendant Raymond L. Hughes notwithstanding the verdict is reversed.
The alternative ruling of the trial court conditioned upon the JNOV's being reversed in any manner, was to order a new trial. See Ala.R.Civ.P. 50(c)(1). After trial, the parties stipulated to the fact that several of the liens admitted into evidence and considered by the jury had, in fact, been paid in full. The jury, then, considered evidence during its deliberations that should not have been before it and apparently would not have been before it if the parties had been aware that some of the liens had been satisfied. The trial court could not, nor can we, speculate as to what effect this improper evidence may have had on the jury. Under these circumstances, we hold that the trial court did not abuse its discretion[2] in granting a new trial. SeeWelch v. Jones, 470 So.2d 1103 (Ala. 1985);Hancock v. City of Montgomery, 428 So.2d 29 (Ala. 1983). *Page 144 
Because only the JNOV for Raymond L. Hughes was improper, only that defendant will be involved in the new trial.
We reverse the judgment of the trial court as to Raymond L. Hughes and remand the case for a new trial as to that defendant; we affirm the judgment as to Mary K. Hughes.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.
[1] The JNOV, thus, rests on Padgett's failure to prove elements (3) and (5) of the tort of promissory fraud. We characterize the promises as "misrepresentations" because the trial court did not find to the contrary. Satisfaction of elements (1) and (4) obviously requires that a "misrepresentation" have been made.
[2] In Jawad v. Granade, 497 So.2d 471, 477 (Ala. 1986), we held that "an order granting a motion for a new trial on the sole ground that the verdict is against thegreat weight or preponderance of the evidence will be reversed for abuse of discretion where on review it is easily perceivable from the record that the jury verdict is supported by the evidence." (Emphasis added.) The ground for new trial here is different, so the Jawad standard of review is not applicable.