[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 336 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 337 
Bernard Byrd appeals from a summary judgment in favor of several Alabama State University ("ASU") faculty members and the Board of Trustees of ASU. Byrd claimed that the faculty members and the Board of Trustees fraudulently represented to him the existence of a music media curriculum at ASU. We affirm the trial court's judgment in part and reverse it in part.
 I. Facts and Procedural History[1]
Byrd transferred to ASU from Miami-Dade Community College in the fall semester of 1995, to pursue a degree in music media. Byrd chose ASU based upon the information he had seen in ASU's "General Undergraduate Catalog, 1994-1996" (hereinafter "undergraduate catalog 1994-1996"). The catalog stated that ASU's school of music offered programs of study for students who wanted professional training in "music education, or broad-based liberal arts training with a strong emphasis in instrumental, keyboard or vocal music, or music media technology." The catalog stated that the school of music had a recording booth, "with state of the art equipment." The catalog further stated that specialized course work in the music media program would involve "basic and advanced recording, the physics of music, digital signal processing techniques, and audio production for film and video." Finally, the catalog stated that the senior-year *Page 338 
curriculum included a music media internship and that a "complete music media laboratory contains some of the most advanced studio equipment available."
Dr. Horace Lamar, the dean of ASU's school of music, was Byrd's academic advisor at ASU. Early in his academic career, Byrd asked Dr. Lamar for permission to enroll in some of the music media courses. Dr. Lamar told Byrd that he had to complete ASU's core-requirement classes before he could take the music media courses. ASU's undergraduate catalog 1994-1996 stated: "Officially, all freshman are admitted to University College and must complete that College's requirements before entering a degree-granting program. However, students who plan to major in music are assigned a special advisor and begin taking music courses in their first semester." Dr. Lamar consented to Byrd's taking courses from the general music curriculum during his first three years at ASU; however, Byrd was not allowed to take any music media courses during his first three years.
Byrd alleges that, in 1997, he again asked Dr. Lamar for permission to enroll in a music media course. According to Byrd, Dr. Lamar told him that ASU was looking for an instructor to teach its music media courses. Byrd continued to take courses to satisfy his core requirements.
During his fourth year at ASU, Byrd became increasingly frustrated because he had not taken any of the courses listed in ASU's undergraduate catalog for students majoring in music media. In 1997, ASU revised the list of courses offered to students seeking a degree in music media. ASU's "General Undergraduate Catalog 1997-1999," listed the following courses for music media students: physics of music, basic recording, advanced recording, audio production, digital-signal processing techniques for musicians, music business survey, practicum in recording, internship, creative projects, and recital media. Byrd had not taken any of these courses by his fourth year at ASU.
According to Byrd, in February 1999, Carol Porter, an instructor in the music department, told Byrd that she had talked with Dr. Lamar about the music media curriculum because she was interested in several of the music media courses listed in ASU's catalog and "wanted to learn about that field as well." Porter told Byrd that Dr. Lamar told her that "he was just bull****ting [Byrd] and [Erin Caudill, another music media student] about the music media program." Byrd immediately met with Dr. Lamar and voiced his concerns that he had not taken any music media courses. According to Byrd, Dr. Lamar told him that, although the sequence in which courses were to be taken had changed, Byrd could still take the necessary music media courses to graduate in May 2000. Dr. Lamar also told Byrd that he would arrange for Byrd to take the "basic recording" course during the 1999 spring semester. According to Byrd, the instructor for the "basic recording" course, Ralph Chapman, did not appear in class until four weeks into the semester; when he did appear, he offered to give Byrd and the other music media students in the class a grade for the course, even though they had done nothing to earn it.
Byrd wrote letters to Dr. Lamar, the dean of the school of music; Dr. Roosevelt Steptoe, the vice president of academic affairs; Dr. Jacqueline Williams, the vice president of student affairs; and Dr. William Harris, the president of ASU, stating that he did not understand why the courses in his music media major were not being taught at ASU and that he had been misled about the status of his degree program. In a letter to Byrd, Dr. Steptoe acknowledged receiving Byrd's letter, and *Page 339 
he suggested that Byrd maintain his communication with Dr. Lamar during the completion of his studies at ASU. Byrd met with Dr. Steptoe shortly after he received Dr. Steptoe's letter. According to Byrd, Dr. Steptoe apologized for the fact that the instructor for the "basic recording" course had offered to give the students a grade that they had not earned, and he promised to offer more music media courses in the near future.
On May 4, 1999, Dr. Lamar mailed Byrd a memorandum listing the music media courses required for Byrd to graduate and indicating when those courses would be offered. The memorandum stated that "basic recording" and "practicum in recording" would be offered in the 1999 fall semester, "advanced recording, audio production, and an internship" would be offered in the 2000 spring semester, and "digital signal processing" and "recital" would be offered in the 2000 summer semester.
In the fall semester of 1999, Byrd enrolled in the basic recording and practicum in recording courses. According to Byrd, no instructor appeared on the first day of classes to teach the courses. Byrd alleges that about five weeks into the semester, Ron Handy, an instructor in the music department, told Byrd that Dr. Lamar asked him to show Byrd "some things in the music recording area." According to Byrd, Handy told him that ASU's music-recording equipment was outdated. Handy showed Byrd ASU's recording studio. According to Byrd, there were boxes all over the floor and most of the equipment in the studio did not work.
Although Handy agreed to bring some equipment from his home to his office to show Byrd "what he knew about music recording," according to Byrd, Handy told him that he did not have the credentials to teach either the basic recording course or the practicum in recording. Byrd alleges that Handy told him that he would show Byrd how to "break down a computer, take the cords off the computer and take the cords off [Handy's] mixer, and show Byrd the sequencing" on his computer. Handy told Byrd that if he could put the computer back together, Handy would give Byrd a passing grade for both courses. Byrd refused to accept Handy's offer.
Byrd alleges that between the 1999 spring semester and the 1999 fall semester, three ASU music professors — Ron Handy, Tony Van Free, and Doug Bristol — told him that the music media program had been discontinued several years before Byrd enrolled at ASU. Those music professors also told Byrd that ASU did not have a qualified music instructor to teach the music media courses. Byrd, frustrated because he was unable to complete the courses in his music media major, decided to withdraw from ASU in the spring semester of 2000, without completing his degree.
Byrd met with Dr. Williams, the vice president of student affairs, to obtain her signature on his withdrawal form. Byrd testified that Dr. Williams told him that she had heard about him, and she acknowledged receiving his letter regarding the music media program. Byrd testified that Dr. Williams told him that she had talked with Dr. Harris, the president of ASU, about Byrd. According to Byrd, both she and Dr. Harris "pointed fingers" at Dr. Steptoe, the vice president of academic affairs. Dr. Williams asked Byrd to talk with Dr. Steptoe once more before he withdrew from school. Dr. Williams telephoned Dr. Steptoe and scheduled an appointment for Byrd.
Byrd testified that during his meeting with Dr. Steptoe, Dr. Steptoe admitted that there was no music media program at ASU and stated that other schools offered *Page 340 
programs in their catalogs that they were not actually able to make available to students. Byrd testified that Dr. Steptoe offered to "strike a deal" with him. According to Byrd, Dr. Steptoe told Byrd, who had at this time hired an attorney, that if he "dropped" his lawyer Byrd would be given "transportation, somewhere to stay, free schooling, and free room and board." Byrd also testified that Dr. Steptoe offered to provide the cost of tuition for Byrd to complete a music media program at another college. Byrd withdrew from ASU during the spring semester of 2000. Byrd testified that he did not know whether any music media courses were offered during the spring semester of 2000.
Byrd sued ASU, and Dr. Lamar, Dr. Steptoe, Dr. Harris, Dr. Williams (hereinafter referred to collectively as "the ASU defendants"), and the Board of Trustees of ASU, all in their individual and official capacities, alleging breach of contract and fraud. The trial court dismissed Byrd's claims against ASU, his breach-of-contract claim, and his claims against Dr. Lamar, Dr. Steptoe, Dr. Harris, Dr. Williams, and the members of the Board of Trustees in their official capacities, holding that those defendants were immune from suit pursuant to Ala. Const. of 1901, Art. I, § 14. Byrd filed an amended complaint alleging what he described as fraud claims against Dr. Harris and Dr. Lamar, promissory-fraud claims against Dr. Lamar and Dr. Steptoe, and suppression claims against Dr. Williams and Dr. Harris. Although Byrd named ASU's Board of Trustees as defendants in his amended complaint, Byrd failed to allege any claims against the Board.[2]
The trial court subsequently entered a summary judgment in favor of each of the ASU defendants and the Board of Trustees in their individual capacities, holding that Byrd had never communicated with Dr. Williams, Dr. Harris, or any member of the Board of Trustees and that therefore his fraud claims as to those defendants were without merit; that Byrd had failed to produce substantial evidence indicating that Dr. Lamar or Dr. Steptoe had made untrue statements to Byrd or that Byrd had relied to his detriment on the alleged statements; that Byrd failed to produce substantial evidence of an intent to deceive and an intent not to do the acts allegedly promised in order to support his promissory-fraud claims against Dr. Steptoe and Dr. Lamar; and that Byrd failed to produce substantial evidence indicating that the music media program was fraudulent in order to support his suppression claims against Dr. Williams and Dr. Harris. Byrd appeals the summary judgments in favor of Dr. Harris, Dr. Lamar, Dr. Steptoe, and Dr. Williams in their individual capacities. Byrd does not challenge the dismissal of ASU and Dr. Harris, Dr. Lamar, Dr. Steptoe, Dr. Williams, and the Board of Trustees, in their official capacities, nor does Byrd challenge the summary judgment in favor of the Board of Trustees in their individual capacities (see note 2).
 II. Standard of Review
In determining whether a summary judgment was proper, this Court applies the "substantial evidence" rule. Under this rule, once the movant makes a prima facie showing that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law, the nonmovant must introduce substantial evidence creating a genuine issue of material fact. Warehouse Home Furnishing Distribs.,Inc. v. Whitson, *Page 341 709 So.2d 1144, 1151 (Ala. 1997). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, we examine the evidence in the light most favorable to the nonmovant, and we resolve all doubts against the movant. Cantrell v. North River Homes,Inc., 628 So.2d 551, 553 (Ala. 1993).
 III. Fraud
Byrd argues that the trial court erred when it entered a summary judgment for Dr. Harris and Dr. Lamar on his fraud claims.
 A. Dr. Lamar
Byrd's complaint alleged what he describes as a fraud claim as well as a promissory-fraud claim against Dr. Lamar. However, the ASU defendants argue that Byrd's "fraud" claim is, in actuality, a suppression claim. Specifically, in support of his "fraud" claim, Byrd's complaint alleged that Dr. Lamar knew, or should have known, that the music media courses listed in the ASU catalog "were not being taught and would not be taught." Byrd alleged that Dr. Lamar, as his academic advisor, had a duty to inform Byrd that the information in the catalog concerning the music media program was false and that the music media courses listed in the catalog would not be taught. We agree with the ASU defendants' contention that Byrd's fraud claim against Dr. Lamar is, in actuality, a suppression claim. In fact, Byrd conceded in his reply brief to this Court that his fraud claim against Dr. Lamar is actually a suppression claim. However, Byrd did not argue in his initial brief to this Court that the trial court erroneously entered the summary judgment for Dr. Lamar as to the suppression claim; he argued in that brief that the trial court erroneously entered the summary judgment for Dr. Lamar as to the misrepresentation claim.
We cannot consider Byrd's suppression claim as to Dr. Lamar, in light of the settled rule that this Court does not address issues raised for the first time in a reply brief. Perkins v. Dean, 570 So.2d 1217, 1220
(Ala. 1990); Kennesaw Life Accident Ins. Co. v. Old Nat'l Ins.Co., 291 Ala. 752, 287 So.2d 869, 871 (1973). Furthermore, we cannot reverse the trial court's judgment based on a version of the complaint that was not before it. See Dailey v. Housing Authority for BirminghamDist., 639 So.2d 1343, 1345 (Ala. 1994) ("This Court will not consider arguments that were not before the trial court."). Because Byrd did not properly allege a fraudulent-misrepresentation claim in his complaint, we affirm the summary judgment in favor of Dr. Lamar as to Byrd's so-called "fraud" claim.
 B. Dr. Harris
Byrd alleges that he chose to attend ASU because he wanted to major in music media and he found ASU's music media program, as described in ASU's undergraduate catalog 1994-1996, appealing. According to Byrd, his undisputed testimony clearly proved that none of the courses listed in the catalog for the music media curriculum were taught during Byrd's four years as an ASU student, that ASU did not have an instructor qualified to teach the specialized courses for music media students, and that ASU did not have the equipment necessary to teach music media courses. Byrd argues that Dr. Harris, as the president of ASU, had the authority and the responsibility to ensure that the information in ASU's catalog was accurate. *Page 342 
Because, Byrd says, the representations in ASU's catalog were material to Byrd's decision to enroll at ASU and because he relied upon those representations once admitted, Byrd contends that Dr. Harris should be held liable for the allegedly fraudulent misrepresentations in ASU's undergraduate catalog.
We must first resolve the availability of an immunity defense before analyzing the merits of Byrd's substantive claims. See Ryan v. Hayes, [Ms. 1001578, March 22, 2002] 831 So.2d 21
(Ala. 2002) ("the defense of State or State-agent immunity should be determined as a threshold issue"). Dr. Harris contends that Byrd's fraud claim is, in actuality, a claim against ASU. According to Dr. Harris, ASU — not Dr. Harris — published the undergraduate course catalog. Dr. Harris argues that Byrd cannot circumvent ASU's sovereign immunity by suing Dr. Harris, in his official or individual capacity, for the alleged misrepresentations in the ASU undergraduate catalog. Dr. Harris cites Carter v. Board of Trustees of Univ. of Alabama inBirmingham, 431 So.2d 529, 531 (Ala. 1983), quoting Milton v. Espey,356 So.2d 1201, 1202 (Ala. 1978) ("'The prohibition of Section 14 [of the Constitution] cannot be circumvented by suing the official or agent individually.'").
Although Dr. Harris maintains that Byrd's lawsuit is, in actuality, a suit against the State, his argument on appeal addresses whether he is liable on the merits for Byrd's fraud claim. We acknowledge that when a State agent acts "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law," the agent is not immune from civil liability. Ex parte Cranman,792 So.2d 392, 405 (Ala. 2000). Because the allegations of the complaint charge Dr. Harris, in his individual capacity, with fraud, Ex parteCranman does not shield Dr. Harris from immunity, and we must analyze the merits of Byrd's fraud claim.
In order to survive a summary judgment on his fraud claim, Byrd had to prove by substantial evidence that there was a genuine issue of material fact as to whether Dr. Harris (1) made a misrepresentation; (2) of a material existing fact; (3) upon which Byrd reasonably relied; (4) which proximately caused injury or damage to Byrd. See Padgett v. Hughes,535 So.2d 140, 142 (Ala. 1988). Byrd presented evidence in the form of his deposition testimony, the affidavit of another music media student, ASU undergraduate catalogs, and correspondence between Byrd and Dr. Lamar and Dr. Steptoe, indicating that the ASU undergraduate catalog 1994-1996 misrepresented the courses that would be available to music media students and the condition of its music recording studio. However, Byrd failed to present substantial evidence indicating that Dr. Harris prepared the course curriculum for the school of music, that Dr. Harris was specifically aware of what courses the catalog advertised for music media students, or that Dr. Harris had approved the ASU undergraduate catalog, 1994-1996, for publication.
Further, the record is devoid of any evidence indicating that Dr. Harris made any direct misrepresentation to Byrd. The record indicates that Byrd initiated contact with Dr. Harris only once while he was a student at ASU. During the fall semester of 1999, Byrd wrote a letter to Dr. Harris and to several other faculty members. Byrd testified that the letter was in response to the failure of the instructor for the basic recording course to appear until four or five weeks into the semester and the instructor's offer to give students in the course a grade for work they had not performed. In the letter, Byrd explained *Page 343 
that he was concerned about finishing his degree program and that he did not understand why courses in his major were not being taught at ASU. There is no evidence in the record indicating that Byrd received any response from Dr. Harris.
"Fraud is never presumed, and a person who asserts fraud has the burden of proof." Wilson v. Southern Med. Ass'n, 547 So.2d 510, 514 (Ala. 1989). We recognize that the president of any institution is the highest authority within that institution and that he or she bears the responsibility for managing the operation of the institution. However, without substantial evidence indicating that Dr. Harris himself made misrepresentations to Byrd or that he approved the alleged misrepresentations in the ASU catalog, Byrd's fraud claim against Dr. Harris must fail. Thus, the trial court did not err when it entered a summary judgment in favor of Dr. Harris as to Byrd's fraud claim, and that summary judgment is affirmed.
 IV. Promissory Fraud
Byrd argues that the trial court erred when it entered a summary judgment in favor of Dr. Lamar and Dr. Steptoe on his promissory-fraud claims.
 A. Dr. Lamar
Byrd argues that the trial court erred when it entered a summary judgment in favor of Dr. Lamar as to Byrd's promissory-fraud claims. Byrd argues that Dr. Lamar repeatedly misrepresented the status of ASU's music media program and that Byrd relied upon Dr. Lamar's alleged misrepresentations to his detriment. Specifically, Byrd alleges that the music media courses listed in ASU's catalog were not being offered. Byrd alleges that ASU did not have the equipment to teach music media courses as it had represented in its catalog. Finally, Byrd alleges that Dr. Lamar represented that two music media courses would be taught in the fall semester of 1999; however, Byrd alleges neither of those courses were taught during that semester because ASU did not have a qualified instructor or the necessary equipment to teach those courses.
A plaintiff claiming promissory fraud must, in addition to proving the elements of fraud, prove that at the time of the misrepresentation, the defendant intended not to perform the act promised and intended to deceive the plaintiff. Padgett v. Hughes, 535 So.2d at 142.
 "While the mere failure to perform the promised act is not by itself sufficient evidence of fraudulent intent, for purposes of a promissory-fraud claim, `the factfinder may consider that failure, together with other circumstances, in determining whether, at the time the promise was made, the promisor intended to deceive.'"
Ex parte Grand Manor, Inc., 778 So.2d 173, 182 (Ala. 2000) (quotingMurphy v. Droke, 668 So.2d 513, 516 (Ala. 1995)). A defendant's intent to deceive can be established through circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made.Vance v. Huff, 568 So.2d 745, 750 (Ala. 1990).
Byrd testified that he requested permission from Dr. Lamar to enroll in music media courses shortly after he transferred to ASU. Dr. Lamar, Byrd's academic advisor and the dean of the school of music, told Byrd to concentrate on completing his core requirements before he took any music media courses. During Byrd's deposition, the ASU defendants questioned him extensively regarding whether Byrd had finished his core requirements and whether his failure to finish all of his core requirements may have been the reason Byrd was unable to enroll in music media *Page 344 
courses. At one point, the ASU defendants refer to a document in which the writer, presumably Dr. Lamar, stated that Byrd did not complete his core classes until the fall semester of 1999 and that he had therefore just become eligible to take the music media courses. However, that document is not included in the record; therefore, we cannot consider it. Dr. Lamar failed to present any evidence indicating that the music media courses had been offered during Byrd's four years as an ASU student. Nor did Dr. Lamar show that Byrd had opted either not to take such courses or that they had been offered to other music media students and Byrd simply had not qualified to enroll because he had not completed his core requirements. The record does contain a copy of ASU's undergraduate catalog 1994-1996, which states: "Officially, all freshman are admitted to University College and must complete that College's requirements before entering a degree-granting program. However, studentswho plan to major in music are assigned a special advisor and begintaking music courses in their first semester." (Emphasis added.)
Byrd testified that he had requested permission from Dr. Lamar to enroll in the music media courses listed in ASU's undergraduate catalog on several other occasions. According to Byrd, Dr. Lamar repeatedly told him that he must first finish his core requirements. Byrd testified that in the spring semester of 1997, Dr. Lamar told him that ASU was searching for an instructor to teach its music media courses and that Byrd should continue to take his core requirements. Byrd testified that in the spring semester of 1998, Dr. Lamar told him that he was still searching for a music media instructor and that Dr. Lamar would be going to Miami, Florida, to meet with a prospective candidate. Byrd testified that by the time that he had reached his fourth year at ASU, he had not taken any of the music media courses represented in ASU's undergraduate catalog as being offered by ASU.
Byrd also submitted the affidavit of Erin Caudill, another music media student; in that affidavit Caudill stated that Dr. Lamar told her on several occasions that ASU could not offer music technology courses, such as recording, digital-signal processing, and courses requiring students to work with recording equipment, because he could not find an instructor to teach those courses. Caudill stated that ultimately, in 1999, ASU offered a "recording I" course. However, Caudill stated that the class started late in the semester and that the instructor was not knowledgeable on the subject. Caudill stated that there was no textbook for the course and the reading material had been photocopied from a book published in the 1970s. Caudill also stated that the equipment in the music studio was outdated and insufficient. Caudill stated that she eventually transferred to Auburn University at Montgomery.
As previously stated, Byrd testified that in the spring semester of 1999, Carol Porter, an instructor in the music department, told Byrd that Dr. Lamar told her "that he was just bull****ting [Byrd] and [Erin Caudill] about the music media program." When Byrd questioned Dr. Lamar about Porter's statements, Byrd testified that Dr. Lamar told him that, although the sequence in which the classes should be taken had changed, Byrd could still take the music media courses and graduate in May 2000. During the spring semester of 1999, Dr. Lamar provided Byrd with a schedule of the music media courses ASU ostensibly offered. That course schedule indicated that two music media courses would be offered during fall semester 1999, three music media courses would be offered during spring semester 2000, and *Page 345 
two music media courses would be offered during summer semester 2000. Byrd enrolled in the two courses Dr. Lamar had represented would be offered in fall semester 1999; however, Byrd testified, no instructor appeared in either class for the first five weeks of the course. Byrd testified that when he finally met with the instructor, Ron Handy, Handy admitted that he was not qualified to teach the courses and offered Byrd a grade for the courses for completing a minor assignment.
Byrd testified that between spring semester 1999 and spring semester 2000, three professors in the music department told Byrd that the music media program had been discontinued several years before Byrd enrolled at ASU. Byrd testified that Tony Van Free and Doug Bristol told him that Dr. Lamar had not made any efforts to recruit or hire qualified instructors for the music media program. Byrd further testified that Van Free and Bristol told him that over the years, they had questioned Dr. Lamar about what should be done about the music media program and specifically about searching for a music media instructor, but that Dr. Lamar had shown no concern for continuing the program. Byrd testified that Bristol told him that he had suggested to Dr. Lamar that the music media program should be taken off the list of majors shown in ASU's undergraduate catalog and taken off ASU's Web site on the Internet. Byrd testified that two professors, Handy and Chapman, admitted that they were not qualified to teach music media courses, but said that they had been "pushed up" by Dr. Lamar to trying to teach music media courses. Byrd testified that both instructors offered to give Byrd a grade for the courses, although Byrd had performed almost no work for those grades.
Dr. Lamar argues that Byrd's claims are without merit because, he says, Byrd's failure to complete his core requirements and his withdrawal from ASU prevented Byrd from completing the program and graduating in a timely manner. However, Byrd's claims are not based upon the fact that Byrd could not graduate on time. Byrd claims that while he was a student, he was unable to enroll in courses represented in the ASU catalog as being offered for music media students. Further, the music media courses in which Byrd did enroll were taught by unqualified professors who proposed to give Byrd a grade without actually teaching the course. Completing a degree in music media by enrolling in courses and accepting grades that he had not earned would not have prepared Byrd for a career in music media.
Finally, Dr. Lamar argues that Byrd's evidence is based upon conversations Byrd allegedly had with ASU faculty members, that those conversations are inadmissible hearsay, and that they, therefore, do not constitute substantial evidence indicating that Dr. Lamar intended to deceive Byrd. Dr. Lamar, however, did not object to Byrd's statements during his deposition, and Dr. Lamar, along with the other ASU defendants, submitted Byrd's deposition testimony as support for their motions for a summary judgment without objecting to those statements. This Court will not consider issues raised for the first time on appeal.Crews v. Herman Maisel Co., 524 So.2d 980, 983 (Ala. 1988).
The record contains substantial circumstantial evidence supporting Byrd's contention that Dr. Lamar misrepresented the status of ASU's music media program and that Dr. Lamar knew in the spring semester of 1999 that ASU did not have the equipment or the instructors qualified to teach music media courses in the fall semester of 1999. Byrd's deposition *Page 346 
testimony and affidavit and the affidavit of Erin Caudill, another former music media student, create genuine issues of material fact regarding whether Dr. Lamar is liable for promissory fraud. Therefore, the summary judgment for Dr. Lamar on the promissory-fraud claim is reversed.
 B. Dr. Steptoe
Byrd also contends that the trial court erred when it entered a summary judgment in favor of Dr. Steptoe on Byrd's promissory-fraud claim. In his complaint, Byrd states a promissory-fraud claim against Dr. Steptoe, alleging that Dr. Steptoe promised that Byrd would be able to complete a degree in music media at ASU in a "timely manner," that the music media courses listed in the catalog would be taught in the near future, and that Dr. Steptoe, when those statements were made, had no intention of carrying out those promises. Byrd alleges that Dr. Steptoe's position afforded him access to course information, access to ASU's music facilities, and access to knowledge regarding the recruitment and hiring of instructors for the music media program. Byrd argues that, at the very least, Dr. Steptoe acted recklessly when he promised that the courses Byrd needed to complete a major in music media would be offered in the near future.
Unlike basic fraud claims that may be based upon reckless conduct, promissory fraud requires proof of intent to deceive. See Padgett, 535 So.2d at 142. See also Hillcrest Ctr., Inc. v. Rone, 711 So.2d 901, 906
(Ala. 1997) (quoting Russellville Prod. Credit Ass'n v. Frost,484 So.2d 1084, 1087 (Ala. 1986) ("'[A] reckless misrepresentation cannot constitute fraud where the alleged misrepresentation relates to some future event. Where the misrepresentation relates to some future event, it must be shown that the person making the representation intended not to do the act promised at the time the misrepresentation was made.'")). A plaintiff alleging promissory fraud has the burden of proving that, at the time the promise was made, the defendant intended to deceive the plaintiff. Goodyear Tire Rubber Co. v. Washington, 719 So.2d 774,776 (Ala. 1998).
Byrd's affidavit submitted in opposition to the motion for a summary judgment states:
 "Roughly four weeks into the semester [which began in January 1999], the instructors for the promised courses had yet to appear, prompting me to write Dr. Lamar, Dr. Roosevelt Steptoe, Vice President of Academic Affairs at Alabama State University, [and others], explaining my concerns and asking for help.
 "On April 6, 1999, Dr. Steptoe responded by sending a copy of correspondence between himself and Dr. Lamar expressing regret about the instructor, but promising that . . . I would still be able to complete the program in a `timely manner.'
 "Later in the semester during the month of April 1999, an instructor named Ralph Chapman talked to me and other Music Media students and offered to give a grade for the courses without actually teaching the Class.
 "Erin Caudill and I went to Dr. Steptoe to report Mr. Chapman's statement and to explain that a meaningless grade would not help us land a recording studio job if we couldn't operate the equipment.
 "Dr. Steptoe apologized and made more promises about offering the classes in the near future."
(Emphasis added.)
Byrd wrote Dr. Steptoe on November 2, 1999, accusing him of falsely staging a *Page 347 
show of displeasure with Dr. Lamar over the status of the music media program. Byrd wrote: "You should receive an acting award." When asked about this letter in his deposition, Byrd testified, "And I knew it [Dr. Steptoe's display of displeasure] was unreal because finding out what Ifound out before I wrote this letter, that he knew something about it, was just an act like he was making me believe that he was mad at Dr. Lamar." (Emphasis added.)
Byrd also testified as to a meeting he had with Dr. Steptoe in April 2000, shortly before he withdrew from ASU. When asked to tell "everything you recall about the meeting," Byrd testified that, among other things, he told Dr. Steptoe, "The problem wasn't fixed and you knew about theproblem all along." (Emphasis added.) He said that he told Dr. Steptoe, "You knew that that program wasn't there. You knew that someone was writing that grant up to the federal government to receive funds for it. And, he told me in the meeting, he was talking about, No, I didn't know.I didn't know that that program wasn't receiving funds. He didn't know that someone was still writing a grant up, which were all lies I found out that very next day." (Emphasis added.) Then, according to Byrd, Dr. Steptoe stated that he was scared and admitted to him that the program was not actually offered by ASU and that other schools were also offering nonexistent programs in their catalogs. Dr. Steptoe, according to Byrd, offered him "transportation, somewhere to stay, free schooling, and free room and board" if Byrd would "drop" his lawyer and strike a deal, and also offered to provide the cost of tuition for Byrd to complete a music media program at another school. Byrd refused, saying the damage was already done to him and what he wanted was for the program actually to be taught at ASU and for ASU to stop misleading students. Dr. Steptoe responded, according to Byrd, "Give me one more chance. If I can't get it done right, I'll take it from the catalog." Byrd said, "I have already given you all your chances."
Byrd clearly testified in his affidavit that Dr. Steptoe promised him in early 1999 that he would be able to complete the music media program at ASU in a "timely manner" and that the music media courses would be taught in the "near future." The evidence before us regarding Dr. Steptoe's intent to deceive Byrd at the time he made the promises to perform an act in the future consists of Byrd's accusations, made when he was voicing his complaints, that Dr. Steptoe knew he would be unable to perform. Byrd testified that he knew by November 2, 1999, Dr. Steptoe "knew something about it." Dr. Steptoe's counsel did not challenge this statement or request elaboration of the basis upon which it was made. Dr. Steptoe offered Byrd's deposition in support of his motion for a summary judgment. Byrd did more than merely state a belief or express an opinion as to Dr. Steptoe's knowledge. Byrd stated as a matter of fact that Dr. Steptoe knew the program was nonexistent at the time the promises were being made.
We measure the sufficiency of evidence on a motion for a summary judgment by the same standard that would apply to a motion for a judgment as a matter of law. Fast Phones, Inc. v. City of Montgomery, 842 So.2d 617
(Ala. 2002). Circumstantial evidence is appropriate proof of a present intent not to perform in a promissory-fraud case. Ex parte Grand Manor,Inc., 778 So.2d 173 (Ala. 2000). We do not here face evidence that, if believed, would constitute evidence of only recklessness. We have substantial circumstantial evidence of Dr. Steptoe's involvement in ASU's curriculum by reason of his position as vice president of academic affairs. We *Page 348 
have Byrd's testimony that Dr. Steptoe promised him that he could complete the music media program in a "timely manner" and that the music media courses listed in the ASU catalog would be taught in the "near future." Furthermore, we have Byrd's statement that Dr. Steptoe knew that ASU did not offer a music media program. Byrd's testimony that Dr. Steptoe made the promises, coupled with Byrd's testimony that Dr. Steptoe knew at that time that those promises could not be fulfilled, are sufficient to create a jury question as to the promissory-fraud claim. The evidence of a similar assertion by Byrd of prior knowledge on a later occasion followed by Dr. Steptoe's denial does nothing more than support the necessity for a jury determination on this issue. We hold that the trial court erred in entering a summary judgment in favor of Dr. Steptoe as to Byrd's promissory-fraud claim.
 V. Suppression
Byrd next argues that the trial court erred when it entered a summary judgment in favor of Dr. Williams and Dr. Harris on his suppression claims.
In order to establish a fraudulent-suppression claim, a plaintiff must prove (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the suppression of that fact induced the plaintiff to act or refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result. Booker v. United American Ins. Co., 700 So.2d 1333, 1339 (Ala. 1997).
Byrd alleges that Dr. Williams and Dr. Harris suppressed the fact that ASU could not offer music media courses. Byrd alleges that he notified Dr. Williams and Dr. Harris, by letter, about the lack of music media courses offered that had been listed in the catalog. Byrd argues that when Dr. Williams and Dr. Harris received his letter, they had a duty to disclose to him that ASU did not have qualified instructors or the equipment to teach those music media courses. However, Byrd has presented no evidence indicating that Dr. Williams or Dr. Harris had knowledge that music media courses were not being taught in the music department, that ASU did not have a qualified instructor to teach the music media courses, or that the music equipment in the recording studio was outdated and did not work. "`One can be liable for suppression only of a fact of which one has knowledge.'" Brushwitz v. Ezell, 757 So.2d 423, 432 (Ala. 2000) (quoting Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288,1292 (Ala. 1993)). Knowledge cannot be presumed. Byrd had the burden of proving that a genuine issue of material fact exists as to whether Dr. Williams and Dr. Harris knew that music media courses were not being offered, that they had a duty to inform Byrd that those courses would not be offered during Byrd's tenure as a student, and that they concealed that fact from Byrd.
Furthermore, even if Dr. Williams and Dr. Harris did have knowledge that ASU could not offer music media courses, Byrd presented no evidence indicating that Dr. Williams or Dr. Harris attempted to conceal that fact from him. Byrd testified that he had only one conversation with Dr. Williams; that conversation occurred after he decided to withdraw from ASU. Byrd had no formal communication with Dr. Harris, and Byrd received no acknowledgment that Dr. Harris ever received his letter. Because there is no evidence indicating that Dr. Williams and Dr. Harris tried to actively conceal the fact that ASU could not offer music media courses, the summary judgments in favor of Dr. *Page 349 
Williams and Dr. Harris on Byrd's suppression claims must be affirmed.
 VI. Conclusion
Based upon the foregoing, we conclude that the trial court properly entered summary judgments in favor of Dr. Harris, Dr. Williams, and the Board of Trustees in their individual capacities. The trial court also properly entered a summary judgment in favor of Dr. Lamar in his individual capacity as to Byrd's fraud claim. However, the trial court erred when it entered a summary judgment in favor of Dr. Lamar and Dr. Steptoe in their individual capacities as to Byrd's promissory-fraud claims. The summary judgment is affirmed insofar as it relates to Byrd's claims against Dr. Harris, Dr. Williams, and the Board of Trustees and Byrd's fraud claim against Dr. Lamar. Insofar as it relates to Byrd's promissory-fraud claims against Dr. Lamar and Dr. Steptoe, the summary judgment is reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and Houston, See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] The evidence set forth below is based upon the following documents: Byrd's deposition testimony; Byrd's affidavit; the affidavit of Erin Caudill, a former ASU music media major; correspondence between Byrd and the ASU defendants; Byrd's class schedules; Byrd's academic record; and ASU's undergraduate catalogs for the 1994-1996 and 1997-1999 academic years. The ASU defendants did not offer any testimony.
[2] Byrd has conceded in his appellate brief that the trial court properly dismissed or entered a summary judgment in favor of all members of the Board of Trustees.